UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION


WHITNEY MORRISON,

      Plaintiff,

v.                                      CASE NO. 6:19-CV-299-T-MAP

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## ORDER

      This is an action under 42 U.S.C. § 405(g) seeking judicial review of the administrative denial of period of disability, supplemental insurance benefits ("SSI"), and disability insurance benefits ("DIB"). At issue is whether the ALJ applied the correct legal standard in weighing the opinions of Daniel Cochran, M.D., treating doctor, and whether the ALJ applied the correct legal standards to Plaintiff's testimony. Having considered the record, the matter is remanded for further administrative proceedings consistent with this opinion.[1]

      *A.*    *Background*

      Plaintiff Whitney Morrison, born on August 9, 1975, filed applications for period of disability, DIB, and SSI on October 24, 2014, and October 27, 2014, respectively, alleging disability beginning October 24, 2014. She alleges disability due to anxiety, bipolar disorder, headaches, and fibromyalgia (R. 63-64, 395-96). Plaintiff earned a bachelor's degree and then a

_____

[1] The parties consented to my jurisdiction. *See* 28 U.S.C. § 636(c).

master's degree in organizational psychology and leadership (R. 65) and has past work experience as a customer service representative and administrative assistant (R. 80-81). At the time of the administrative hearing, April 5, 2018, Plaintiff testified that she lived with her parents and received food stamps (R. 64). She testified that she suffers from pain in her wrists and hands; pain in her back, knees, and hip; and mental problems (R. 65-73). She was diagnosed with fibromyalgia in 2004, but explained that she probably had it for years prior to her diagnosis (R. 71). She has bipolar disorder, and testified she fluctuates between extreme mania and extreme depression (R. 73). She also suffers from severe anxiety, characterized by difficulty breathing, shortness of breath, and chest tightness (R. 74). Plaintiff testified she has an emotional support animal, a Chihuahua (R. 74). Her daily activities are sparse: she wakes up screaming due to pain, eventually gets out of bed, drinks coffee that her mother has prepared for her the night before, and attempts stretching exercises (R. 75). Throughout the day, she relies upon her parents to prepare most of her meals, do her laundry, and give her prescribed medications.

In a decision dated June 6, 2018, the ALJ found Plaintiff has the following severe impairments: bipolar disorder with anxiety and depression; osteoarthritis, bilateral knees; arthralgia; carpal tunnel syndrome, bilateral hands; and kidney disease (R. 14). The ALJ further found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §404.1520(d), 404.1525 and 404.1526) (R. 14). After carefully considering the record in its entirety, the ALJ concluded Plaintiff has the RFC to perform sedentary work with additional limitations. Specifically, the ALJ concluded she has the residual functional capacity to:

… perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except no push/pull of foot controls; occasional push/pull with upper extremities; frequent reaching, handling, fingering with bilaterally upper extremities; occasional climbing of ramps/stairs, occasional balancing, stooping, kneeling, crouching or crawling; no climbing of ladders//ropers/scaffolds; occasional exposure to unprotected heights, moving mechanical parts, operating a motor vehicle and vibrations; limited to completing simple, routine , and repetitive tasks; simple decision making; not able to perform at a production rate (i.e. assembly line work) but can perform goal oriented work; occasional interaction with supervisors and coworkers and infrequent contact with the public; in a non-confrontational setting with no conflict resolution, arbitration or negotiating.

(R. 16). Plaintiff remained insured through December 31, 2019 (R. 12). The ALJ found Plaintiff is unable to perform her past relevant work, but considering her age, education, work experience, and RFC there are a significant number of jobs in the national economy that she can perform. Specifically, after consulting with a vocational expert, the ALJ concluded Plaintiff can perform the requirements of jobs such as table worker, addresser, and sorter (R. 22-23). Plaintiff appealed the ALJ's decision, but the Appeals Council denied Plaintiff's request for review (R. 2-7). Having exhausted her administrative remedies, Plaintiff filed this action.

## B. Standard of Review

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential

evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. § 404.1520(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal

analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

### C. Discussion

Plaintiff asserts the ALJ failed to properly consider the opinions of her treating physician, Daniel Cochran. Generally, the opinions of examining physicians are given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. §§ 404.1527(c)(1-5); 416.927(c)(1-5). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted). The following factors are relevant in determining the weight to be given to a physician's opinion: 1) the "[l]ength of [any] treatment relationship and the frequency of examination"; 2) the "[n]ature and extent of [any] treatment relationship"; 3) "[s]upportability"; 4) "[c]onsistency" with other medical evidence in the record; and 5) "[s]pecialization." *Id.* Notwithstanding these regulations, the ultimate responsibility for reviewing and assessing Plaintiff's RFC rests with the ALJ. RFC is an assessment based on all relevant medical and other evidence of Plaintiff's ability to work despite his impairments. *Castle v. Colvin*, 557 Fed. Appx. 849, 852 (11th Cir. 2014) (citing *Lewis v. Callahan*, 125 F.3d 1436 (11th Cir. 1987)).

Dr. Cochran served as Plaintiff's primary treating physician from 2014 through 2016. Review of Dr. Cochran's records show he treated Plaintiff for a spectrum of problems; most

treatment concerned Plaintiff's fibromyalgia and chronic pain (R. 680-683, 696-707, 714-741, 756, 783-797, 944-1028, 1044-1100).   In the main, Dr. Cochran prescribed Tramadol and Hydrocodone for her chronic pain.   The administrative record contains Dr. Cochran's March 2017 Physical Residual Functional Capacity Questionnaire as well as Dr. Cochran's September 2017 updated opinions.   Specifically, Dr. Cochran opined in March 2017 that Plaintiff experiences severe constant pain in her hips, back, knees, and hands as a result of fibromyalgia. He further opined that she takes "chronic opiod meds [with] limited pain relief," has markedly limited range of motion, and is "impaired [with] meds and cannot reasonably accomplish ADLs" (R. 864).   As a result, Dr. Cochran indicated Plaintiff is limited to sitting for twenty minutes at a time; standing for five minutes at a time; sitting for less than two hours during an 8-hour work day; and standing/ walking for less than two hours during an 8-hour work day (R. 864-865).   He also indicated she needs to use a walker or cane; can lift and carry less than ten pounds rarely; and that she cannot use her hands/fingers/arms to grasp, turn or twist objects (R. 865-866). Dr. Cochran opined on September 7, 2016, that Plaintiff's functional status and pain had both worsened.   He explained that Plaintiff reported that she was unable to function without 24-hour aid due to severe generalized pain from fibromyalgia, he opined that she was unable to spend more than 5-10 minutes in any given position (R. 946).

The ALJ's order includes a short one paragraph discussion of Dr. Cochran's March 2017 Physical Residual Functional Capacity Questionnaire (R. 20; 863-866), but no discussion of Dr. Cochran's September 2017 opinions and only a very abbreviated explanation of Dr. Cochran's voluminous treatment records. The ALJ stated:

> A Physical Residual Functional Capacity Questionnaire was completed by Daniel Cochran, M.D., of the Tuscawilla Family Practice Group on March 17, 2016, revealed

limitations which if accepted as true, would preclude even sedentary work. The undersigned notes that neither records from this treating source nor any other records document the necessity for such severe limitations. She has required nothing but conservative treatment and has never been referred to any specialists for surgical consults nor for additional diagnostic testing. As such, this opinion is given no weight.

R. 20. I cannot conclude that the ALJ's conclusory discussion provides "good cause" for her decision to accord "no weight" to this treating physician's opinions. As Plaintiff asserts, the ALJ's order fails to articulate factual support for her conclusion. And I find no record support for the ALJ's remarks that the administrative record shows Plaintiff required "nothing but conservative treatment" and that Dr. Cochran's and other records do not support these severe limitations. Moreover, I am troubled by the ALJ's failure to discuss and weigh Dr. Cochran's September 7, 2016 opinions, her failure to discuss Plaintiff's difficulty paying for and getting the treatment she needed, and her failure to adequately address fibromyalgia.[2] For these reasons, explained more fully below, remand is needed.

Dr. Cochran cited fibromyalgia as the primary diagnosis supporting both Plaintiff's physical and her mental symptoms (R. 863-64). But the ALJ failed to find Plaintiff's fibromyalgia a severe impairment at step two, and also failed to discuss it along with her other non-severe impairments (R. 14). Then, in deciding that Dr. Cochran's opinions were entitled to "no weight," the ALJ again failed to discuss Plaintiff's fibromyalgia diagnosis; she stated only that

---

[2] Dr. Cochran's records include an email to Dr. Cochran's office from Plaintiff dated July 14, 2015. The email indicates Plaintiff knows she owes Dr. Cochran's office money, she has attempted to join a patient assistance program in order to get her prescription medications before the 23rd when she runs out, and she has had a very difficult time with her fibromyalgia and can't afford to go one dose without her meds (R. 1021). This email is consistent with Plaintiff's testimony that she was seeking approval from Johnson & Johnson to participate in a patient assistance program for brand name Topamax (R. 73).

Dr. Cochran's and the other medical evidence revealed only conservative treatment with no referrals to specialists for surgical consultations or for additional diagnostic tests (R. 20).   The ALJ characterized Plaintiff's symptoms as "waxing and waning" and noted that there was little evidence to support her complaints of pain (R. 21).   In summarizing the overall treatment record, the ALJ stated:

> Overall the claimant has a lengthy history of treatment for mental and physical symptoms with very few diagnostic tests ordered and those that were, failed to reveal any abnormalities.   She has received fairly conservative treatment with injections and medication management.   Her symptoms appear to wax and wane and her most recent mental treatment shows improvement with medications.   Again, it is noted that although carpal tunnel syndrome appears as a diagnosis in file, no EMG or other diagnostic tests were ever performed to support the diagnosis.   Again, the xrays were normal.   There is nothing in the record to support any allegation of back pain.   It is noted that the injections and treatment for her knees did not mention osteoarthritis.

(R. 21).   All the ALJ's observations are consistent with a fibromyalgia diagnosis. Per the American College of Rheumatology, "[f]ibromyalgia is a clinical syndrome defined by chronic widespread muscular pain, fatigue and tenderness … Unfortunately, there are no what are called 'objective markers' - evidence on X-rays, blood tests or muscle biopsies for this condition, so patients have to be diagnosed based on the symptoms they are experiencing."[3]   This circuit recognizes this science, and requires an ALJ to support any rejection of a claimant's pain complaints with acceptable evidence.   *Moore v. Barnhart,* 405 F.3d 1208, 1211-1212 (11th Cir. 2005) (although fibromyalgia lacks objective signs, substantial evidence supported the ALJ's findings that the daily activities of a Plaintiff who suffered from fibromyalgia were inconsistent with her pain testimony).

---

[3]   www.rheumatology.org/public/factsheets/diseases_and_conditions/fibromyalgia.asp

Moreover, pursuant to Social Security Ruling 12-2p, effective July 25, 2012, subjective complaints are the "essential diagnostic tool" for fibromyalgia and physical examinations will usually yield normal results- a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. Thus, SSR 12-2p instructs that fibromyalgia must be considered in the five-step sequential evaluation process, and instructs an ALJ on how to develop evidence and assess fibromyalgia in determining whether it is disabling. SSR 12-2p states that when making an RFC determination, an ALJ should "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a persons may have 'good days and bad days'" SSR 12-2p, 2012 WL 3104869 (2012). Additionally, when determining whether a claimant is capable of doing any past relevant work or other work that exists in significant numbers in the national economy, SSR 12-2p instructs an ALJ to consider widespread pain or other symptoms associated with fibromyalgia (such as fatigue) and to "be alert to the possibility that there may be exertional or nonexertional limitations, such as postural or environmental limitations, that may impact the analysis." *Id.*

Plaintiff reports she was diagnosed with fibromyalgia in Maryland in 2005 (R.171, 516). Dr. Cochran's records consistently include fibromyalgia and chronic pain as ongoing problems. *See generally* R. 679, 683, 697, 701-702, 819, 947, 957-959, 963, 966, 969, 975, 981, 989, 991, 994, 996, 999, 1001, 1004, 1006, 1009, 1045-47, 1050-52, 1057, 1063-66, 1067-72, 1075-78, 1081-84, 1086, 1091, 1096-99. For example, on January 22, 2015, Dr. Cochran's note indicates, "Treatment goals: Decrease pain intensity, Improve functional mobility, Maintain functional ADL/IADL" and "Plan: Will continue to monitor for signs of aberrant drug-related behavior including but not limited to early requests for refills, increasing dosages, or s/s of intoxication" (R.

683).   The record shows that Dr. Cochran modified Plaintiff's pain medications often in an attempt to control her continued complaints of chronic pain. Dr. Cochran's notes depict a patient who struggled to live with chronic pain and was prescribed multiple prescription pain medications (R. 947, 966, 978, 1024, 1063).   For instance, his September 7, 2016, note states:

> Fibromyalgia and chronic pain, will continue MS Contin, 15mg tid and recheck in three months.   It is not controlling her pain, but I have let her know that I'm not comfortable continuing to increase.   We will hold steady and plan on getting her back in pain management when she does get disability.

(R. 947). Dr. Cochran's records include a February 12, 2016, phone message from Plaintiff reporting her fibromyalgia pain has been very severe; she cannot get out of bed unassisted; she must use a walker but does so with great difficulty; Tramadol was not working; and she tried hydrocodone but it also did not help.   The message ends with: "pt states 'she can't take this pain, doesn't know what to do, states her hair, teeth, nails, everything hurts' and she was crying over the phone toward the end of the message." (R. 1023).   Contrary to the ALJ's notations that no other records document the necessity for Dr. Cochran's severe limitations and that Plaintiff has required nothing but conservative treatment, the record shows that in December 2016, Dr. Law referred Plaintiff to a pain management clinic and recommended that she stop taking Morphine (that the ER had prescribed) (R. 873); and that in February 2017 Dr. Mamsa noted weakness in both legs and Plaintiff's ambulated with a walker, and increased her Topamax to twice a day (R. 1030).   In March 2017, Pain Management PRC Associates records show Plaintiff's chronic pain prevented her from performing activities of daily living including social activities and daily grooming; she had tried pharmacotherapies, injection therapies and physical therapy; examination revealed tenderness and reduced range of motion; and a new prescription for opiods to control her chronic pain (R. 1286-1287).   Dr. Bhatti, the pain management doctor, characterized Plaintiff as

"suffer[ing] from chronic disabling pain which has caused psychological social and physical impairment" and recommending a course of therapeutic facet joint injections for subsequent pain relief" (R. 1291).

Against this backdrop, I find the ALJ failed to sufficiently consider or discuss the hallmark symptoms of fibromyalgia when she evaluated Dr. Cochran's opinions (and also when she evaluated Plaintiff's subjective complaints). Specifically, the ALJ did not adequately consider the criteria specified in 20 C.F.R. § 404.1529(c)(3) as it relates to her fibromyalgia impairment, and failed to mention or follow SSR 12-2p which sets forth the criteria for evaluating fibromyalgia. *See Morgan v. Commissioner*, 2015 WL 1311062 (M.D. Fla. March 24, 2015) (remanding where ALJ failed to mention or follow SSR 12-2p's criteria concerning fibromyalgia). As in *Morgan*, I am unable to determine whether the ALJ's ultimate disability determination is supported by substantial evidence because she failed to consider Plaintiff's fibromyalgia according to the criterion set forth in SSR 12-2p. Admittedly, the Plaintiff did not consult with a rheumatologist, but the medical records consistently document joint pain, arthralgias, and fatigue that typically accompany fibromyalgia. Given fibromyalgia's uniqueness, she should have addressed these important facts and more fully discussed and evaluated Plaintiff's fibromyalgia in weighing the medical opinions, and in reaching her RFC determination.

The Court need not address more fully Plaintiff's remaining argument, that the ALJ erred in evaluating her subjective complaints. *See Jackson v. Bowen*, 810 F.2d 1291, 1294 n.2 (11th Cir. 1986) (stating that where remand is required, it may be unnecessary to review the other issues raised). I note, however, that on remand the ALJ should consider that fibromyalgia often lacks objective findings, and that it typically is characterized by a waxing and waning of symptoms.

Given the circuit's holding in *Moore*, Plaintiff's lack of objective clinical and laboratory findings, standing alone, cannot justify the rejection of her pain account.[4] *See Moore, supra,* 405 F.3d at 1211.

   *D.  Conclusion*

For the reasons stated above, it is ORDERED:

1.  The ALJ's decision is REVERSED, and the case is remanded to the Commissioner for further administrative proceedings consistent with this Order; and

2.  The Clerk of Court is directed to enter judgment for Plaintiff and close the case.

DONE AND ORDERED at Tampa, Florida on April 7, 2020.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

---

[4] "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Foote v. Chater,* 67 F.3d 1553, 1561 (11th Cir. 1995). In certain situations, pain alone can be disabling, even when its existence is unsupported by objective evidence. *Id.*